UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-14009-CR-MARTINEZ(GRAHAM)/LYNCH

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JESUS IVAN ESTRADA-GARCIA,

      Defendant.

                         /

FILED by _____ D.C.

APR - 9 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION TO DISMISS COUNT II [D.E. #25]

**THIS CAUSE** having come on to be heard upon the aforementioned motion and this Court having reviewed the motion, the government's response, and noting that no reply has been filed in respect thereto and that the time for filing a reply has expired, makes the following recommendation to the District Court:

1.    The Defendant is charged in Count II of the Indictment with being an alien found to be illegally in the United States after a prior deportation, in violation of Title 8, United States Code, Section 1326(a).  The Motion to Dismiss does not challenge the sufficiency of the allegations set forth in Count II of the Indictment.  The allegations set forth within Count II do adequately recite the statutory framework and sufficient facts to meet the standard for placing the Defendant on notice as to the charges pending against him so as to avoid double jeopardy.

2.    The Defendant's Motion to Dismiss challenges the prior deportations and removals of the Defendant to Mexico.  The facts establish that the Defendant was found in the United States in January of 2004.  He appeared before an immigration judge in the Middle District of Florida on or about January 30, 2004.  At that time, the Defendant executed a Stipulated Request for Removal as well as a Waiver of Immigration Hearing. The Defendant was thereafter removed from the United States to Mexico on or about February 4, 2004.  Thereafter, the Defendant was found in the State of Colorado in April

of 2004. The previous Order of Removal entered by the immigration judge was reinstated and the Defendant once again removed to Mexico on or about April 29, 2004.

3.     Neither the Defendant nor the government has requested an evidentiary hearing in this matter so this Court will make its recommendation based upon the pleadings and exhibits attached thereto as filed by the parties.

4.     The Defendant's motion challenges the notice that he was given in respect to his first deportation/removal in February of 2004. The Defendant alleges that when he was arrested on January 22, 2004 in the Middle District of Florida, he had been in the United States two years continuously and therefore was entitled to a removal hearing. The Defendant alleges that he was engaged to his present wife on or about January 2, 2004 and that his wife is a United States citizen. However, this Court notes that the Defendant was not married to his present wife at the time of his first deportation/removal. The Defendant argues that as of the date of his arrest on January 22, 2004, he was entitled to be a derivative beneficiary of an Alien Petition dated January 24, 1997 which would have allowed him to have his immigration status adjusted upon marrying his present wife.

5.     The Defendant alleges that he executed the Waiver of Immigration Hearing and Consent to Removal involuntarily and unknowingly, in that he alleges that certain facts were misrepresented to him by the immigration officers and that the Spanish translation of the documents which he executed were unintelligible to him. The Defendant alleges that the Spanish translation failed to advise him of his right to a removal hearing and voluntary departure from the United States. The Defendant argues now some nine years after the fact, that he thought he was requesting leniency and not waiving a hearing. This Court will review the particular documents which the Defendant attaches and which the government attaches to their respective pleadings in this regard. This Court finds the Defendant's affidavit to not be credible in respect to the sufficiency of the notices given to him prior to

2

his executing the waiver and consent to deportation in February of 2004. This Court will more specifically discuss those later herein.

6.      The Defendant further argues that he believed he would have to stay in custody for up to six months to get an immigration hearing and thought that the waiver would expedite his return to Mexico within a week. The Defendant acknowledges that Title 8, United States Code, Section 1326(d) permits a collateral attack of his previous removal in very limited circumstances. Both the Defendant and the government agreed in respect to what those statutory requirements are. In order to be able to collaterally attack the removal which serves as the basis for the Defendant legally reentering the United States under Count II, the Defendant would have to establish (1) that he had exhausted all administrative remedies in respect to his prior removal, (2) that his prior removal proceedings deprived him of judicial review, and (3) the Order of Removal was fundamentally unfair.

7.      The Defendant argues that he has exhausted his administrative remedies since the waiver he executed not only waived his right to a removal hearing but also waived his appellate rights. The Defendant argues that he would have been eligible for voluntary departure from the United States since he had not been previously removed from the United States, had been in the United States at least one year and had not committed an aggravated felony. The Defendant argues in very general assertions, that the removal order entered by the immigration judge in February of 2004 was "fundamentally unfair."

8.      The Defendant attaches several exhibits to his motion. The two most pertinent ones for this Court's review are the Defendant's affidavit and the affidavit of Dr. Carmayd-Freixas. The Defendant's affidavit confirms that he did know what he was doing at the time that he executed the waiver. The Defendant's affidavit states that he is not conversant in the English language and only attended eight years of school in Mexico.

3

However, the Defendant does not assert that he is illiterate nor that he could not completely understand the documents which were presented to him prior to his signing them. The Defendant's affidavit does not state that he had any questions concerning any of the provisions of the waiver before he signed it. There is no mention that he questioned the immigration officers or even the immigration judge concerning any of the provisions contained within the waiver which he signed.

9.     The Defendant's affidavit states that he was informed he had no immigration rights in the United States and would be detained for up to six months unless he signed the form which would then allow him to return to Mexico within days. The Defendant alleges that the forms were not explained to him. Further, the Defendant alleges that had he known that he was eligible for voluntary departure, he would have requested an immigration hearing.

10.     This Court points out that these allegations by the Defendant are self-serving in nature and are raised for the first time some nine years after execution of the waiver and his initial removal from the United States. The Defendant's affidavit at one point states that the forms were not explained to him, but in other portions of the affidavit the Defendant alleges that immigration officers made certain statements to him concerning his rights. This appears to be a conflict in the Defendant's own recollection of the facts. Nevertheless, even if this Court accepts the Defendant's affidavit as true, this Court does not believe that he falls within the provisions of the applicable statute to succeed in collaterally attacking his prior deportation which serves as the basis for one of the essential elements the government must prove in respect to Count II of the Indictment.

11.     The other document which this Court finds to be interesting is the affidavit of Dr. Camayd-Freixas. Dr. Camayd-Freixas' affidavit states that he is an expert in forensic linguistics with a Ph.D. from Harvard University in romance languages. His affidavit goes

4

through details of how he interprets the Petition and Waiver executed by the Defendant in February of 2004. There is nothing in Dr. Camayd-Freixas' affidavit which states that he has ever met or spoken with the Defendant. Further, there is nothing in the affidavit as having been advised of the specific educational background and intelligence of the Defendant. In fact, this Court is somewhat shocked that without any specific knowledge of the Defendant, Dr. Camayd-Freixas then makes the generalized assertion that "it is very common for undocumented aliens from Mexico, despite having received some elementary education, to be functionally illiterate and to have a very limited understanding of the U.S. legal system." He then goes on to attempt to categorize the Defendant's literacy and understanding of the documents by referencing the "tentative block letters, without any fluid strokes," of the Defendant's signature as being "strongly indicative of a functionally illiterate person."

      12.    Dr. Camayd-Freixas then goes on to linguistically pick apart word-for-word the Petition and Waiver executed by the Defendant. However, this Court discounts the doctor's affidavit since the best evidence is the document itself, which both the Defendant and the government attach to their pleadings and which adequately advised the Defendant at the time, in his native Spanish language:

            (1)    That he had the right to be represented by a lawyer at no expense to him at any immigration proceedings and that he waived such representation.

            (2)    That he requested removal from the United States and understood that he was giving up any right to appear before an immigration judge and that he would be removed from the United States without a hearing.

(3)     He admitted the factual allegations contained in the Notice which he previously acknowledged that he had received and which was dated January 22, 2004 concerning his illegal status in the United States.

(4)     He agreed that he is not eligible for relief from removal permitting him to depart voluntarily.

(5)     That he requested that he be removed to Mexico.

(6)     That he waived any right to appeal the written decision in respect to his removal.

(7)     That he would be barred from returning to the United States for at least ten years and that he has read the stipulated request or had it read to him in his native language and that he submits the request voluntarily, knowingly and intelligently.

Once again, nine years after the fact, the Defendant now attempts to challenge the written documents which best memorialize his understanding of the proceedings at the time.

13.     Unfortunately, the affidavit of Dr. Camayd-Freixas does nothing to enlighten this Court as to the particular facts and circumstances which occurred some nine years ago surrounding the signing of the waiver by this Defendant.  Additionally, as this Court will address later herein, the applicable case law and statutory framework does not support the Defendant's collateral attack of his prior deportation.

14.     Should the Defendant have wanted to challenge his removal from the United States, he should have filed an appropriate petition with the appropriate court of appeals at the time of his removal or filed a petition for writ of habeas corpus pursuant to Title 28, United States Code, Section 2241, challenging the deportation order after he had

6

exhausted his administrative remedies. The Defendant has not proceeded in either fashion and now wishes to collaterally attack his prior removal some nine years after the fact. See Tefel v. Reno, 180 F.3d 1286 (11th Cir. 1999) and Mejia-Rodriguez v. Reno, 178 F.3d 1139 (11th Cir. 1999).

15.     The Defendant, in challenging a prior deportation as fundamentally unfair, must at a minimum demonstrate that the outcome of the deportation proceedings would have been different but for the particular error which the Defendant alleges. Neither the Defendant's affidavit nor his motion makes a sufficient allegation that there is a reasonable likelihood that his deportation proceedings would have resulted in a different outcome if he had been provided an immigration hearing. The Defendant does not challenge the fact that he was illegally in the United States and subject to removal in January of 2004. Rather, he generally argues that he may have been entitled to an adjustment of status or may have been entitled to be considered a derivative beneficiary. However, these determinations by the immigration authorities are discretionary in nature and are not something which the Defendant would have been automatically entitled to at the time of his initial deportation in February of 2004. He provides no legal authority to the contrary.

16.     An alien defendant's due process rights to judicial review of his prior deportation order are not violated simply because he was not specifically informed of his right during any such removal proceedings as would require invalidation of the indictment pending against him for illegal reentry after removal. United States v. Lopez-Solis, 2013 WL 216061 (11th Cir. 2013). In Lopez-Solis, the Eleventh Circuit Court of Appeals found that the general notice given to the defendant at the time of his removal adequately advised him of the immigration judge's deportation order and its consequences, just as the Petition and Waiver in this case did. Further, there were no affirmative misstatements which misled the defendant in Lopez-Solis to believing that he could not appeal his

deportation and his failing to do so waived any such right to judicial review, just as the Defendant has done in this case.

17.     There is no factual basis in this case establishing a lack of actual notice of the removal proceedings and the consequences of the Defendant waiving his rights to removal in February of 2004. The Defendant now may wish to recall those facts somewhat differently, but even his affidavit adequately sets forth sufficient notice to him concerning the proceedings pending against him.  It appears as though the only real challenge the Defendant is attempting to make is that he believed that he had an argument for adjustment of his status based upon allegedly being a derivative beneficiary of a prior immigration application made by his fiancee.  However, at the time of his removal in February of 2004, he and his fiancee had not yet been married and this Court does not see how he could have been considered to be a legal relative or a derivative beneficiary of his fiancee's petition.  For the previous deportation order to be "fundamentally unfair," the Defendant must establish that there are specific errors which prejudiced the Defendant. Even taking the Defendant's affidavit at face value, he does not establish specific errors which would constitute fundamental unfairness under Title 8, United States Code, Section 1326(d).  United States v. Zelaya, 293 F.3d 1294 (11th Cir. 2002).

18.     The Defendant argues that by executing the Waiver of Removal that he waived his rights to appeal as well. He therefore concludes that he has exhausted his administrative remedies. This Court disagrees. The Defendant wants this Court to find his waiver to be invalid for purposes of establishing his prior removal in February 2004, but then argues that the same waiver is valid to serve as a basis for finding he has exhausted his administrative remedies. He can not have it both ways. There are specific procedural steps which the Defendant had available to him subsequent to his removal from the United States in February of 2004 to appeal and/or seek review the Order of Removal of the

8

immigration judge before reentering the United States illegally later that same year when he was found in the State of Colorado. The Defendant could have filed a petition challenging the Order of Removal while out of the United States.  He chose to not do so and this Court finds that he has not exhausted his administrative remedies in that regard. United States v. Valentin-Morales, 131 Fed. Appx. 159 (11th Cir. 2005).

19.     As stated by this Court previously, if the Defendant's initial entry into the United States in January of 2004 was illegal, he was legally deportable at that time.  If, despite errors at any prior proceeding, the immigration proceedings would not have yielded a different result, then his prior deportation order was valid.  That prior deportation order then may be used as an element in the prosecution for illegal reentry as set forth in Count II of the Indictment.  See United States v. Lopez-Vasquez, 227 F.3d 476 (5th Cir. 2000).

20.     In summary, in order to be able to collaterally attack the prior deportation order which serves as the basis for one of the elements the government must establish under Count II, the Defendant must show that he has exhausted his administrative remedies.  This Court finds that he did not exhaust such administrative remedies.  Nine years later, he now wishes to attack that prior deportation by his self-serving affidavit.  A much better procedure would have been to attack that deportation order in an administrative proceeding at the time when all of the facts, witnesses, and events were fresh in everyone's mind.

21.     Secondly, if the Defendant had exhausted his administrative remedies, he still must establish that the deportation proceedings deprived him of judicial review.  The waiver on its face, which was executed by the Defendant, clearly advised him of his rights to a hearing as set forth in the Notice to Appear and that he was waiving his rights to such hearing.  This Court has pointed out the pertinent portions of the waiver herein.

9

22.     Even if he had established both of these statutory requirements, the Defendant has not shown that the Order of Removal is fundamentally unfair . He has failed to set forth plausible facts that there was a reasonable likelihood that there would have been a different outcome in the removal/deportation proceedings if he had been provided an administrative hearing.

23.     The Defendant makes no reasonably specific allegations that he would have met the standard to permit him to remain in the United States.  The Defendant merely makes generalized statements and speculates that he "may" have been permitted to have his immigration status adjusted based upon the length of time that he had been in the United States prior to being arrested in January of 2004 and/or "may" have been found to be a derivative beneficiary of his fiancee's application.   These speculations and generalized assertions do not meet the standards set forth in the applicable case law cited by this Court herein. The Defendant has not established that the Order of Removal was fundamentally unfair.   Therefore, the Defendant has not met any of the statutory requirements to collaterally attack the removal order which serves as one of the elements the government must establish in order to obtain a conviction under Count II.

**ACCORDINGLY,** this Court recommends to the District Court that the Defendant's Motion To Dismiss Count II [D.E. #25] be **DENIED**.

Due to the upcoming trial date, this Court must shorten the time for filing objections with the District Court.  Therefore, the parties shall file objections to this Report and Recommendation, if any, with the Honorable Jose E. Martinez, the United States District Judge assigned to this case **on or before April 15, 2013**.  Pursuant to Federal Rules of Criminal Procedure, Rule 59(b)(2), failure to file objections timely waives a party's right to review and bars the parties from attacking on appeal any legal rulings and factual findings contained herein.

**DONE AND SUBMITTED** this _____ day of April, 2013, at Fort Pierce, Northern Division of the Southern District of Florida.

_____
FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE


Copies furnished:
Hon. Jose E. Martinez
AUSA Theodore M. Cooperstein
Vincent J. Benincasa, Esq.

11